IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL LEDEBUR | : | |
| 141 Roslyn Ave. | : | CIVIL ACTION |
| Glenside, PA 19038 | : | No. |
| and | : | |
| PE&L INVESTMENTS, LLC | : | |
| 254 East Hector Street | : | |
| Conshohocken, PA  19428 | : | |
| Plaintiffs, | : | |
| | : | |
| ARTHUR S. McHENRY III (individually) | : | |
| 38 Country Lane | : | |
| Glen Mills, PA | : | |
| and | : | |
| MAC BUSINESS SERVICES, LTD. | : | |
| 2409 South Water Street | : | |
| Philadelphia, PA  19148 | : | |
| and | : | |
| BE THE BANK INVESTMENTS | : | |
| 2409 South Water Street | : | |
| Philadelphia, PA  19148 | : | |
| i/j/s/a, Defendants | : | |

**COMPLAINT**

Plaintiff, PE&L Investments, LLC, by and through its undersigned counsel hereby asserts

the following Complaint against Defendants and in support thereof states the following:

## THE PARTIES

1.       Plaintiff, Paul Ledebur, is an adult individual residing at 254 East Hector Street, Conshohocken, PA  19428.

2.       Plaintiff Paul Ledebur is the sole member and founder of PE&L Investments, LLC.

3.       Plaintiff, PE&L Investments, LLC, is a Pennsylvania Limited Liability Corporation with its principal place of business at254 East Hector Street, Conshohocken, PA 19428.  Plaintiff, PE&L Investments, LLC is in the business of real estate investment.

4.       Defendant, Arthur S. McHenry, III ("Defendant McHenry") is an adult individual with a current business address of 2409 South Water Street, Philadelphia, PA  19148.

5.       Defendant McHenry is the principal owner and operator of Defendant MAC Business Services, Ltd. ("Defendant MAC"), which has a current business address of 2409 South Water Street, Philadelphia, PA  19148.

6.       Defendant McHenry is the principal owner and operator of Defendant Be The Bank Investments ("Defendant BTB"), which has a current business address of 2409 South Water Street, Philadelphia, PA  19148.

7.       Defendants MAC and BTB are all under the complete control of and function as alter-egos of Defendant McHenry.

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction pursuant to 28 U.S.C. §1331 because this action involves a federal question under the civil Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1361, *et seq.*  This Court has supplemental jurisdiction over Plaintiff's claims under 28 U.S.C. §1367.

9.     Venue is proper in the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events given rise to Plaintiff's claims against Defendant arise in this jurisdictional district.

## FACTS COMMON TO ALL COUNTS

10.     Paul Ledebur met a Defendant BTB sales representative, Lauren Richards, at a networking event in Philadelphia in February of 2016.  Richards told Ledebur that Defendant BTB dealt in non-traditional loans typically made to small developers that were flipping houses in South Philadelphia.  Ledebur was interested in becoming a lender on such projects.  After exchanging emails with Richards.  Richards told Ledebur about Defendant McHenry, a CPA and the owner and principal of Defendant BTB.

11.     Ledebur googled Defendant McHenry, and noted that his CPA license was current.  Defendant BTB's website was consistent with what Richards had been telling Ledebur.  Defendant BTB did not have complaints noted against it in the Better Business Bureau.

12.     Richards introduced Ledebur to Defendant McHenry at another networking event in March 2016.  Defendant McHenry told Ledebur that Ledebur could use the equity in his home to make money for him.  Ledebur agreed to let Defendant McHenry look for a person looking for a loan to set Ledebur up with, and talk further about being a Lender.

3

13.     Defendant McHenry and Ledebur exchanged phone calls between March and May of 2016.  Defendant McHenry told Ledebur that he found a potential Lendee in May of 2016.  Defendant McHenry told Ledebur that he would help Ledebur get a home equity loan, and connected Ledebur with a person from Santander Bank named Demetrious Botsaris, who Defendant McHenry said he worked with all of the time.  Ledebur qualified for the home equity loan with Santander Bank.

14.     Defendant McHenry then told Ledebur the details of the lending opportunity he had found for Ledebur, to a Maxo Michel and Martha Michel.   Defendant McHenry said it was a good deal, and that he was investing some of his own money into it.  Defendant McHenry claimed that the deal had collateral back-up, as well as a guarantor in the oil business, SG Energy Longsport, that was a close personal friend of his.

15.     Defendant McHenry told Ledebur that Defendant BTB was working as Ledebur's agent in the loan, and was completing all the due diligence for the loan.  Ledebur also thought than since Defendant McHenry was willing to invest his own money in this loan, then McHenry had done thorough due diligence.  Ledebur also asked for proof that the property was not vacant, and Defendant McHenry provided copies of leases to Ledebur.

16.     Ledebur did a Google search of the guarantor, SG Energy Longsport, and asked Defendant McHenry for their EIN to make sure it was current.  Ledebur does not recall ever getting the EIN for SG Energy Longsport, but did Google the company, and saw that there were news stories about SG Energy Longsport, and therefore thought the guarantor was a legitimate energy company.

4

17.     In July 2016, Ledebur entered the Maxo and Martha Michel transaction with the understanding that Defendant BTB, working through Defendant McHenry, was working for Ledebur and taking care of all legal and financial details, along with communications with the Lendees, Maxo and Martha Michel.  Ledebur was told that his money was to be lent to Maxo Michel and Martha Michel, who also went by "the Maxo Family," and that Ledebur would be a lienholder on their property at 7150 Ogontz Ave, Philadelphia as collateral for the loan.

18.     Defendant McHenry told Ledebur that he would receive $2500/month in interest payments, until the loan was paid off in three (3) month's time.  See a copy of email from McHenry to Ledebur dated July 22, 2016, with copies of the Loan Documents evidencing the Loan made from MAC Services to Maxo Michel and Martha Michel attached as Exhibit 1. Defendant McHenry also stated in this email that "at the end of the day we had SG Preston, the parent company of SGP Energy Logansport, guarantee the loan."

19.     Richards and a Jacquelin Carlson, both on behalf of Defendant BTB, reached out to a Lisa French of Santander Bank, to assist in moving the paperwork along and seeing when Ledebur would be able to close the home equity loan on his house with Santander, so that Ledebur could then loan that money to the Maxo Family.  Ledebur completed the paperwork with Lisa French of Santander Bank on July 18, 2016 for a home equity line of credit of $228,000.

20.     On July 28th, Ledebur received an email from an Angie Gruver of Defendant BTB, providing Ledebur with a routing number and an account number for defendant BTB. Gruver directed Ledebur to wire $200,000 from his Home Equity Line of Credit ("HELOC") Account to defendant BTB's bank account, which wire was completed on July 29, 2016.

21.     Defendant McHenry provided Ledebur with a document for Ledebur's signature representing the joint loan between PE&L Investments LLC (Ledebur's company) in the amount of $200,000 and MAC Services (McHenry's CPA Company) in the amount of $50,000 made to the Lendees, Maxo Michel and Martha Michel, for a total loan of $250,000.  That document is attached as Exhibit 2 and entitled:  "Agreement to Lend Money and Share Revenue – Profits and Losses."

22.     Defendant McHenry presented another document for Ledebur's signature, and told Ledebur that it was the legal document that would make Ledebur's company a lienholder on the Maxo Family's 7150 Ogontz Ave., Philadelphia, Property.  That document is attached as Exhibit 3 and entitled:  "Assignment of Mortgage."  Defendant McHenry represented to Ledebur that this Assignment of Mortgage would be recorded on the Deed to 7150 Ogontz Ave.  Ledebur learned that this document was only recently recorded in the Philadelphia Recorder of Deed's Office on February 15, 2019, as Document Number 53478679.

23.     Defendant McHenry told Ledebur that Defendant BTB's attorney was Ledebur's attorney in this loan transaction, so Ledebur did not have the documents reviewed by another attorney.

24.     From September 2016 to May 2017, Ledebur received interest-only payments of $2,500 per month, as Defendant McHenry told Ledebur he would, until the $200,000 loan payment was made.  See Email from McHenry dated August 2, 2016, noting $2,500 monthly payments, attached hereto as Exhibit 4.  These payments were wired into Ledebur's bank account from Defendant MAC's bank account.  Ledebur has not received any further payments since May 2017.

25.     When these interest payments stopped, Ledebur tried contacting Defendant McHenry several times.  Defendant McHenry would not return his calls in a timely manner, and then became completely unresponsive for a period of about two months.  McHenry resurfaced around late August or early September 2017, apologized for his behavior, and promised to get Ledebur's loan paid.  Defendant McHenry told Ledebur of several dates of when the loan would be repaid, but Ledebur was never repaid on any of those dates.

26.     Around January 2018, McHenry told Ledebur that a Randy LeTang, CEO of SG Preston, was the party who was defaulting on the loan payments.  Defendant McHenry provided Ledebur with another Agreement, which he told Ledebur would officially move responsibility of repayment of the loan from Maxo Michel and Martha Michel to SG Preston Company.  Ledebur was told that this Agreement was proposed by Randy LeTang and Defendant McHenry.

27.  Ledebur did not understand the Agreement and Defendant McHenry's representations regarding same, so Ledebur did not sign this Agreement.  Defendant McHenry told Ledebur that even if Ledebur did not sign the proposed Agreement, that Ledebur would be paid by April or May of 2018.

28.     Around April or May of 2018, Ledebur reached out to LeTang to see what was going on, and why Ledebur wasn't being repaid the loan principle or even the monthly interest-only payments.  Ledebur had several conversations with LeTang, both on the phone and via text, wherein LeTang reassured Ledebur he would be paid.

29.     In August 2018, Ledebur received a Letter Agreement dated 8/2/18, addressed to Maxo Michel and Martha Michel and Randy Delbert LeTang, in his position as President and CEO of both SGP Energy Logansport, LLC and S.G. Preston Company.  The Letter Agreement

purported to remove MAC from the Loan Agreement, and have S.G. Preston Company execute a new Note directly to PE&L Investments, LLC to pay off the loan. A copy of the Letter Agreement is attached as Exhibit 5. Defendant McHenry would not sign the Letter Agreement, because he said that it released the collateral property, and the Agreement was never enforced.

30.     Defendant McHenry provided Ledebur a copy of the "Assignment of Mortgage", which was recorded in 2019.

31.     Defendants McHenry, BTB and MAC have not provided satisfactory answers to Ledebur regarding an accounting of where the $200,000 Ledebur paid to Defendant BTB went, an accounting of monies paid by the Maxos and/or LeTang to Defendant BTB, nor from whom Defendant BTB received the money to make the $2,500 monthly payments via wire transfer to Ledebur from September 2016 to May 2017.

**COUNT I**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO)**
**18 U.S.C. § 1961, ET SEQ**.

31.     Plaintiff hereby incorporates the above paragraphs by reference as though fully set forth herein at length.

32.     At all times relevant hereto, Defendant McHenry was a "person" within the meaning of 18 U.S.C. § 1961.

33.     At all times relevant hereto, Defendants MAC and BTB were enterprises engaged in or affecting interstate commerce within the meaning of 18 U.S.C. § 1961.

34.     At all times relevant hereto, Defendant McHenry directly or indirectly conducted or participated in conducting the affairs of Defendants MAC and BTB through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

35.     The pattern of racketeering activity continued from at least 2016 to the present.

36.     The pattern consisted of two or more related instances of wire fraud, interstate mail facilities, and interstate communication facilities.

37.     Defendant McHenry knowingly used interstate wires in furtherance of his scheme to defraud Plaintiff.

38.     The specific acts taken by Defendant McHenry in violation of 18 U.S.C. § 1961, *et seq.*, include, but are not limited to:

a.     On 7/28/2016, the Defendant BTB by and through its agents requested and accepted a wire transfer of $200,000 from Ledebur's personal bank account to Defendant BTB's business account.

b.     From September 2016 to May 2017, Ledebur received monthly interest-only payments of $2,500, which were wired into Ledebur's bank account from Defendant MAC's bank account.

c.     Upon information and belief, defendant McHenry made frequent uses of interstate communication facilities, including placing phone calls, texting, and sending emails through interstate communication facilities.

39.     The foregoing predicate acts are related in that they have similar purposes, similar participants, and similar methods.

40.     Defendant McHenry engaged in a pattern of activity to defraud Plaintiff and Paul Ledebur.

41.     Defendant McHenry's actions have caused, and continue to cause, substantial monetary and non-monetary harm to Plaintiff and Paul Ledebur.

42.     There is a threat of future racketeering activity because Defendant McHenry has not abated his fraud and deceit with regard to his attempts to continue harming Plaintiff and its owner/president, Paul Ledebur, including his house being in foreclosure due to his inability to make his Home Equity Line of Credit payments.

**WHEREFORE**, Plaintiffs Ledebur and PE&L Investments, LLC demand judgment in its favor and against Defendants, individually, jointly, severally, and in the alternative, together with an award of compensatory damages, trebled damages, interest, costs, reasonable attorneys' fees, and such other relief as this Court may deem appropriate.

## COUNT II
## FRAUD

43.     Plaintiff hereby incorporates the above paragraphs by reference as though fully set forth at length herein.

44.     Defendant McHenry and Defendant BTB's employees/agents represented to Ledebur that Ledebur's money would be used in a mortgage loan to the Maxo Family, to be secured by a mortgage on the Maxo's property located at 7150 Ogontz Ave in Philadelphia.

45.     The Defendants represented that the Plaintiff would receive monthly interest payments from the Maxo Family in the amount of $2,500, before Plaintiff's loan was repaid in full in three (3) months.

46.     The representations of Defendants caused Plaintiff to wire money to Defendant BTB to be used in a loan to the Maxo Family.  However, the documents provided by Defendant McHenry indicate that Ledebur's money did not go to the Maxo Family, because that mortgage loan had closed in 2015.

47.     Defendant McHenry's actions and statements, as stated above and detailed at length in the Facts section of this Complaint, were made to induce Plaintiff to wire $200,000 to Defendant BTB.

48.     Defendant McHenry's actions and statements, as stated above and detailed at length in the Facts section of this Complaint, were knowingly false at the time they were made.

49.     Plaintiff has suffered, and continues to suffer, monetary and non-monetary harm as a direct and proximate result of Defendant McHenry's knowingly false representations.

**WHEREFORE**, Plaintiffs Ledebur and PE&L Investments, LLC demand judgment in its favor and against Defendants, individually, jointly, severally, and in the alternative, together with an award of compensatory damages, trebled damages, interest, costs, reasonable attorneys' fees, and such other relief as this Court may deem appropriate.

## COUNT III
## BREACH OF FIDUCIARY DUTY

50.     Plaintiff hereby incorporates the above paragraphs by reference as though fully set forth at length herein.

51.     At all times relevant hereto, Defendant McHenry, a CPA, represented to the Plaintiff that he and Defendant BTB were working as his agents in the loan transaction.

52.     Defendant McHenry represented himself as a financial counselor and/or advisor to Ledebur, and advised Ledebur that Defendants' legal counsel was also acting as Ledebur's legal counsel, and convinced Ledebur that he was acting in good faith for Ledebur's interest.

53.     Defendant McHenry, Defendant BTB, and Defendant MAC acted as financial advisors to Plaintiff and actively sought to inspire within Plaintiff confidence that they were acting in Plaintiffs' interests.

54.     Defendant McHenry advised and directed Plaintiff to take out a home equity loan and directed Plaintiff to wire $200,000 to Defendant BTB for the purposes of lending money to the Maxo Family, but Plaintiff's money did not go to the Maxo Family.

55.     Defendant McHenry lied, by action or omission, to Plaintiff about where Plaintiff's money went.

56.     Defendant McHenry lied, by action or omission, to Plaintiff about the source of the $2,500 monthly payments made by Defendant BTB to Plaintiff from September 2016 to May 2017.

57.     Plaintiff has suffered, and continues to suffer, monetary and non-monetary harm as a direct and proximate result of Defendant McHenry's breach of fiduciary duty.

**WHEREFORE**, Plaintiffs Ledebur and PE&L Investments, LLC demand judgment in its favor and against Defendants, individually, jointly, severally, and in the alternative, together with an award of compensatory damages, trebled damages, interest, costs, reasonable attorneys' fees, and such other relief as this Court may deem appropriate.

## COUNT IV
## BREACH OF LOAN AGREEMENT

58.     Plaintiff hereby incorporates the above paragraphs by reference as though fully set forth at length herein.

59.     Defendants have failed and refused to pay Plaintiff under the "Agreement to Lend Money and Share Revenue – Profits and Losses."

60.     Plaintiff has suffered both monetary and non-monetary damages as a direct and proximate result of Defendants' breach.

**WHEREFORE**, Plaintiffs Ledebur and PE&L Investments, LLC demand judgment in its favor and against Defendants, individually, jointly, severally, and in the alternative, together with an award of compensatory damages, trebled damages, interest, costs, reasonable attorneys' fees, and such other relief as this Court may deem appropriate.

## COUNT V
## UNJUST ENRICHMENT

61.     Plaintiff hereby incorporates the above paragraphs by reference as though fully set forth at length herein.

62.     Defendant McHenry and BTB received $200,000 from plaintiff, which, on information and belief, was not loaned to the Maxo Family.

63.     Plaintiff has asked Defendants to return the $200,000, which request has been ignored.

64.     Plaintiff has only received $22,500 in supposed interest-only payments on the $200,000 he wired to Defendants.

65.     Defendants have been unjustly enriched $177,500.

**WHEREFORE**, Plaintiffs Ledebur and PE&L Investments, LLC demand judgment in its favor and against Defendants, individually, jointly, severally, and in the alternative, together with an award of compensatory damages, trebled damages, interest, costs, reasonable attorneys' fees, and such other relief as this Court may deem appropriate.

Respectfully submitted,

RAYMOND COLEMAN HEINOLD LLP

BY:     /s/ Janice L. Heinold
Janice L. Heinold, Esq. (PA ID#80963)
Attorneys for Plaintiffs,
Paul Ledebur and PE&L Investments, Inc.
325 New Albany Rd.
Moorestown, NJ  08057
Phone: 856-222-0100
Fax: 856-222-0411
jheinold@rclawnj.com